**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| RHONDA KING, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHARP HOLDING, INC; ROBERT SHARP; and DOE DEFENDANTS 1-10.<br><br>Defendants. | Civil Action No. 1:22-cv-728<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rhonda King ("King" or "Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

**INTRODUCTION**

1.     This is a class and collective action brought on behalf of "Tipped Employees" (defined herein) who work or have worked at restaurants operating under the trade name "International House of Pancakes" or "IHOP" that are or were owned and operated and/or managed by Defendants Sharp Holding, Inc. and Robert Stack (together "Defendants") and have been subject to the unlawful practices detailed herein.

2.     Upon information and belief, Defendants own and operate approximately 15 IHOP franchise locations in the States of Maryland, New Jersey, Ohio, West Virginia and the Commonwealths of Virginia and Kentucky combined.

3.     As detailed below, Defendants effectively function as a single integrated enterprise in operating their IHOP franchises.

4.     Upon information and belief, each of the IHOP franchises share common ownership and employment policies, including those relating to the compensation of Tipped Employees.

5.    As such, upon information and belief, the employment practices complained of herein were applicable to all Tipped Employees, as Defendants utilized common labor policies and practices.  Accordingly, Defendants are responsible for the employment and compensation practices at issue.

6.    Defendants employ individuals as "servers" ("waiters" and "waitresses") (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.

7.    As explained in detail below, Defendants systematically and willfully deprived Plaintiff and Tipped Employees of minimum wages and overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Maryland Wage and Hour Law, ("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501 *et seq.* by, among other things, failing to satisfy the notice requirements of the tip credit provisions of these wage and hour laws.

8.    Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit", Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees, thus paying them less than the mandated minimum wage.

9.    Moreover, Defendants' Tipped Employees, including Plaintiff, were often required to work in excess of forty (40) hours in a workweek.  Despite them plainly working overtime, Defendants often failed to pay Tipped Employees, including Plaintiff, the proper overtime rate for all overtime hours.

10.    In addition, Defendants also violated applicable wage laws by enforcing a policy

2

or practice of paying Tipped Employees only the tip-credit cash wage when (i) those employees were required to perform non-tipped work that was *unrelated* to their tipped occupation and/or (ii) spent in excess of 20% of their time performing non-tipped work that was *related* to their tipped occupation.

11.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

12.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

13.     In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

14.     In addition, Plaintiff also brings this suit on behalf of the following similarly situated persons for unpaid overtime wages pursuant to the FLSA:

> All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks for Defendants in the United States within the statutory period covered by this Complaint who were not paid for all hours worked and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective OT Class").

15.     In addition, Plaintiff also brings this action as a state-wide class action to recover all unpaid wages under the Maryland Wage and Hour Law, ("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501*et seq.* (collectively "Maryland State Laws").

16.    Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

>    All current and former Tipped Employees who have worked for Defendants in the State of Maryland during the statutory period covered by this Complaint and who do not opt-out of this action (the "MD State Class").

17.    In addition, Plaintiff also brings this suit on behalf of a class of similarly situated persons for unpaid overtime wages pursuant to Maryland State Laws:

>    All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks and were not paid for all hours worked by Defendants in the State of Maryland during the statutory period covered by this Complaint (the "MD OT Class").

18.    The Collective Class, Collective OT Class, the MD State Class, and the MD OT Class are hereafter collectively referred to as the "Classes."

19.    Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid minimum wages from Defendants for hours worked performing unrelated duties to their direct customer service duties; (iii) entitled to unpaid minimum wages from Defendants for hours worked where they spent in excess of 20% of their time performing non-tipped work that was *related* to their tipped occupation; and (iv) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

20.    Plaintiff alleges on behalf of the Collective OT Class that they are: (i) entitled to unpaid overtime wages from Defendants for hours worked for which Defendants failed to pay the proper overtime rate and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq*

21.     Plaintiff further alleges on behalf of the MD State Class that Defendants violated the MD Laws by: (i) failing to comply with the tip credit provisions, as required by law, and consequently failed to pay them the appropriate minimum wages for all hours worked; and (ii) failing to pay all timely wages due and owing.

22.     Plaintiff alleges on behalf of the MD OT Class that Defendants violated Maryland State Laws by failing to pay all overtime wages due and owing for weeks where Tipped Employees worked in excess of forty (40) hours.

**<u>PARTIES</u>**

23.     Plaintiff Rhonda King ("Plaintiff") is a resident of the State of Maryland who is employed by Defendants as a "server" in the state of Maryland.

24.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her executed Consent To Sue form is attached hereto as Exhibit A.

25.     Defendant Sharp Holding, Inc., ("Sharp Holding") is a holding company registered to do business in Virginia, with its headquarters and principal executive offices located at 2406 Oakmont Court, Oakton, VA 22124.

26.     Defendant Sharp Holding, Inc., operates 15 different IHOP restaurants in 6 states. *See* https://www.sharprestaurants.com/about-us/ (last visited June 3, 2022).

27.     According to its website, Defendant Sharp Holding refers to the IHOP restaurants as "Sharp IHOP Locations" and states that "[E]very **Sharp IHOP Restaurant** is staffed by people who love pancakes…." *See* https://sharprestaurants.com/sharp-ihop-locations/ (last visited June 3, 2022)(emphasis added).

28.     In its Mission Statement, Defendant Sharp Holding states it is dedicated to "serving our patrons…" *See* https://sharprestaurants.com/missin-statement/ (last visited June 3, 2022).

29.     Defendant Sharp Holding further states in its Mission Statement that it relies on its "team members" for being one of the best "IHOP franchisees." *Id*.

30.     In the Careers section of its website, titled "Careers at Sharp Holding Inc.," Defendant Sharp Holding states "Sharp Holding, Inc. is currently hiring for our network for All Positions." *See* https://sharprestaurants.com/careers/ (last visited June 3, 2022).

31.     Defendant Sharp Holding and the individual IHOP restaurant locations are a single integrated enterprise.

32.     At all relevant times during the statutory period covered by this Complaint, Defendant Sharp Holding and the individual IHOP restaurants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Sharp Holding uniformly operated its restaurants under common control for a common business purpose.

33.     Defendant Sharp Holding and the individual IHOP restaurants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the IHOP restaurants in the Commonwealth of Virginia and nationwide.

34.     Defendant Sharp Holding and the individual IHOP restaurants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

35.     Upon information and belief Defendant Sharp Holding and the individual IHOP restaurant locations operate with a high degree of interrelated and unified operations, sharing a common officer. Each of the restaurants operated by Defendant Sharp Holding share the common labor policies and practices complained of herein.

36.     Upon information and belief, the sole reason for separate corporate entities for each

IHOP restaurant location was to limit the liability of Defendants

37.     As such, Defendant Sharp Holding, notwithstanding the separate incorporation of the individual IHOP franchise locations, is the ultimate owner and operator of the IHOP franchise locations and thus the employer of the Tipped Employees.

38.      Defendant Robert Sharp is the "founder and owner of" of Sharp Holding. *See* https://sharprestaurants.com/about-us/ (last visited June 3, 2022).

39.     Defendant Robert Sharp is currently listed as the President and Treasurer of Sharp Holding. *See* https://cis.scc.virginia.gov/EntitySearch/BusinessInformation?businessId=270266&source=FromEntityResult&isSeries%20=%20false (last visited June 3, 2022).

40.     Upon information and belief, the registered executive address of Sharp Holding is the residential home of Defendant Robert Sharp

41.     In his capacity as an officer of Sharp Holding Defendant Robert Sharp is responsible for implementing the labor policies and practices of the IHOP Restaurants complained of herein, and exercises sufficient control over Defendants' IHOP restaurants to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and MWHL.

42.     Upon information and belief, at all relevant times hereto, Sharp Holding had gross revenue in excess of $500,00 per year.

43.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.   Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.   Accordingly, unless otherwise

specified herein, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

45.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

46.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as Defendants maintain their primary executive offices in this district and a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

47.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

48.     The crux of the FLSA and Maryland State Laws is, *inter alia*, that all employees are entitled to be paid all wages due and owing.  This includes the proper overtime wages for hours worked in excess of forty and the mandated minimum wages for all hours worked.

49.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage and overtime wage for all hours they worked.

50.     Defendants govern and administer each IHOP restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the restaurant location that a customer may visit.

51.     Upon information and belief, Defendants' restaurants operate under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

52.     Some of those uniform policies/procedures are set forth in a server's cleaning duties listings which are set forth on either sheets or cards provided by Defendants. An example of such cleaning requirements are set forth in Exhibit B, attached hereto.

**PLAINTIFF'S EXPERIENCE WORKING FOR DEFENDANTS**

53.     As set forth above, Plaintiff is employed by Defendants as a "server" in the IHOP restaurant located in Hagerstown, Maryland.  The restaurant is located at 17280 Garland Groh Boulevard,  Hagerstown,  Maryland,  21740.  Plaintiff  began  working  for  Defendants  in approximately 2010.

54.     When clocked in as a "server," Plaintiff was paid an hourly cash wage rate from Defendant and earned tips from customers who chose to leave her a gratuity.

55.     While employed by Defendants as a server, Plaintiff believes her cash wage was $3.63 per hour.

56.     When working for Defendants as a server, Plaintiff does not ever recall her hourly wage being raised for any shift she worked, irrespective of the amount of tips she earned or the type of work she performed.

57.     Plaintiff recorded her work time by swiping into Defendants' point- of-sale ("POS") timekeeping system using her employee card.

58.     Upon information and belief, Defendants utilize "Tray.com" as their POS system.

59.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

60.    Upon information and belief, Plaintiff and other Tipped Employees could not input a customer order into the POS system if they were not clocked in.

61.    Plaintiff typically works five days per week, Monday through Friday.  Her typical shift starts at around 6:15 a.m. when she opens the restaurant. Depending on how busy the restaurant is, Plaintiff's typical day normally ends between 12:30 p.m. and 2:30 p.m.

62.    In total, on average, Plaintiff works approximately thirty-five (35) to thirty-eight (38) hours per week.

63.    Occasionally, Plaintiff worked in excess of forty (40) hours during a given workweek. However, Defendants failed to pay Plaintiff premium overtime compensation for these overtime hours. Rather, as set forth in her paystubs, Defendants simply paid Plaintiff her straight hourly rate for all hours worked. *See, e.g.,* Exhibit C (paystub for check date April 5, 2022).

64.    Plaintiff, as well as other Tipped Employees, is regularly required to perform the job duties set forth in Exhibit B.

65.    While Plaintiff's shifts often begin at 6:00 a.m., the restaurant does not open to the public until 7:00 a.m. On many occasions, Plaintiff does not receive her first table until 8:00 a.m.

66.    Thus, Plaintiff spends the time from when she opens the restaurant until she receives her first table performing cleaning/set-up duties. Because she has no customers during this time, there is no opportunity for Plaintiff to earn any tips during this time.

67.    Prior to receiving her first table, Plaintiff is required by Defendants to perform certain "prep" work.  These tasks typically included, among other things: turn on the coffee machines; rinse all the coffee pots and start brewing coffee; reassemble soda machine; get the tea ern; brew sweet tea and unsweet tea; set up butter well, including taking out the butter and creams (whipped, chocolate, and vanilla); put ice in butter well; retrieve and set up sanitized bucket; make

labels for tea and sanitizer; retrieve bus tray and cutting boards; roll silverware; turn on lights and unlock doors for customers.

68.     Plaintiff estimates that this prep work took, on average, forty-five (45) minutes to complete.

69.     On occasion, Plaintiff would also have to wash dishes left from the night before so that she had the requisite dishes necessary in order to open the restaurant in the morning. In addition, on several occasions, there was no dishwasher for the restaurant so Plaintiff and other Tipped Employees would have to run dishes through the dishwasher during their shifts in order to ensure there was clean dishes and utensils for future customers.

70.     Irrespective of whether the restaurant was open to the public, to the best of Plaintiff's recollection, when "clocked-in" to Defendants' timekeeping system, Plaintiff worked under the "server" job code when she was scheduled as a server.[1]

71.     At the end of her shift, Defendants require Plaintiff to perform her "break down" work.  This "closing side work" typically included Plaintiff performing, among other things, the following tasks: refilling salt and pepper shakers, filling the syrup containers, checking and, if necessary, changing the ketchup bottles, filling the sugar caddies at tables, wiping down tables, wiping down the trash cans, wiping down the doors and walls, and sweeping the floors.

72.     Plaintiff was also required, on occasion, to break down the salad bar, including portion the salsa, sour cream, butter, chocolate chips and other toppings.

73.     In addition, at the end of her shift, Plaintiff was required to have rolled enough silverware so that there were 75 pieces left at the end of the day.

_____

[1] This appears to be in contravention of certain FLSA regulations, including, for example, 29 C.F.R. § 528.28 (a)(4) which requires an employer to maintain records of the "Hours worked each workday in any occupation in which the employee does not receive tips."

74.     As set forth in the index cards, Plaintiff and others were required to: restock printer paper at each terminal; check each terminal for stapler and pens; sanitize POS screen and wipe down machine; and, restock the to go area with plastic bags, utensils, syrups and jellies.

75.     Plaintiff and other Tipped Employees were also required to clean the salad case; run the cutting board through the dishwasher; and place lids on items.

76.     Plaintiff estimates that her break down work takes, on average, approximately thirty (30) to forty-five (45) minutes to complete.

77.     In addition, Defendants require Plaintiff and other Tipped Employees to perform "running side work." This work included, among other things, such tasks as: refilling the ice bin, restocking glasses, and restocking dishes.

78.     In total, Plaintiff estimates that she spends in excess of 30% of her time performing such side work.

79.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work (such as when rolling silverware, wiping down trashcans and walls, or performing strictly "side work") or when working prior to the restaurant opening to the public.  Indeed, to the best of Plaintiff's knowledge, Defendant does not keep track of such time separately from Plaintiff's entries into the POS system.

80.     Further, Plaintiff was also required to take and bag up "to go" orders even though Plaintiff rarely received a tip from "to go" customers for such work. Despite this fact, Defendants required Plaintiff and other Tipped Employees to declare their tips based off their net sales of customers' receipts, including these to go orders.

81.     Consequently, Defendants' records do not accurately reflect the amount of tips Plaintiff actually received from her customers.

82.     Although Plaintiff has worked for Defendants for several years, including during years where the Maryland minimum wage has increased and thus the amount of tip credit an employer can claim has also changed, Plaintiff does not ever recall receiving written confirmation whenever the amount of tip credit claimed by Defendants changed.

83.     On occasion, Plaintiff earned little to no tips despite working a full shift. For example, Plaintiff believes that, on average, she would earn little to no tips one day a week. On these days, despite working a full day, Plaintiff would take home $30 or less in tips.

84.     Plaintiff does not recall her hourly compensation ever being adjusted to account for earning little to no tips during her shift.

85.     Plaintiff believes that the compensation and work policies described herein, including the opening, running, and closing side work duties, applied to both her and all the other Tipped Employees as, at no time, was she informed that a policy or procedure was unique to her.

86.     Indeed, Plaintiff trained newly hired Tipped Employees to perform the same side work she performed.

87.     Accordingly, upon information and belief, Plaintiff believes that her experience with Defendants was typical of the experience other Tipped Employees had with Defendant regarding their pay practices and restaurant procedures.

## THE TIP CREDIT PROVISION & REQUIREMENTS

### *FLSA Requirements*

88.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

89.     Under applicable law, in certain circumstances, it is permissible for an employer to

take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the tip credit wage paid by the employer equals at least the applicable minimum wage.[2]

90.     The applicable requirements for an employer to claim a tip credit under federal law are set forth in 29 C.F.R. § 531.59.

91.     The Department of Labor ("DOL") has set forth these requirements in an easy to read Fact Sheet, specifically Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15").

92.     Fact Sheet #15 specifically states that:

>    the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

93.     As is made plain in both 29 C.F.R. § 531.59 and Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

94.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

95.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

96.     Third, the employer must inform the Tipped Employee that the tip credit claimed

---

[2] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

97.     Indeed, the Regulation specifically states: "If the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance so that the employee receives at least the minimum wage with the defined combination of wages and tips." 29 C.F.R. § 531.59(b).

98.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

99.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

100.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

101.     As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Maryland's Requirements***

102.     Maryland state law also maintains tip notification requirements.  *See* Md. Code Ann., Labor & Emp't § 3-419(a)(1)(ii) ("This section applies to each employee who has been informed by the employer about the provisions of this section").  Accordingly, courts have held that "the analysis of Defendants' entitlement to claim the tip credit is the same under the FLSA

and MWHL." *Prusin v. Canton's Pearls, LLC,* No. JKB-16-0605, 2017 U.S. Dist. LEXIS 183226, *10 (D. Md Nov. 6, 2017).

103.    Importantly, however, Maryland requires hourly workers such as Tipped Employees to be paid a higher hourly wage.  In 2022, , the hourly wage in Maryland is $12.50 per hour.  For Tipped Employees, since July 1, 2014, Maryland requires employers to pay a cash wage of at least $3.63 per hour.  Thus, for each year that the minimum wage was raised, Maryland has effectively permitted employers to take a higher tip credit amount.[3]

104.    Below is a chart detailing the minimum wage in Maryland and the maximum tip credit permissible for certain years:

| Year | Minimum Wage | Minimum Cash Wage | Maximum Tip Credit |
|------|--------------|-------------------|--------------------|
| 2022 | $12.50 | $3.63 | $8.87 |
| 2020 | $11.00 | $3.63 | $7.37 |
| 2019 | $10.10 | $3.63 | $6.47 |
| 2018 | $9.25 | $3.63 | $5.62 |

105.    To help ensure compliance with Maryland's wage and hour laws, Maryland's Department of Labor, Licensing & Regulation ("Department") offers a number of helpful guides and forms to the general public.

106.    In one such brochure, the Department notes that "[i]f an employee does not earn enough tips to meet the tip credit amount, the employer must make up the difference."

---

[3] Thus, for example, in July 2014, when the minimum wage was $7.25, employers were permitted to claim a tip credit of $3.62 per hour. By July 2016, when the minimum wage was $8.75, employers were permitted to claim a tip credit of $5.12 per hour ($8.75 minus the cash wage of $3.63 equals the tip credit amount of $5.12). By July 2017, the tip credit amount had increased to $5.62 due to the minimum wage rate now being $9.25 per hour.

https://www.dllr.state.md.us/forms/esstipinfobrochure.pdf (last visited January 25, 2019).

107.    The Department also makes clear that if Tipped Employees "are from time to time assigned to perform non-tip related tasks" they "must be paid by their employer at least the full minimum wage rate for that non-tipped time." *See* https://www.dllr.state.md.us/labor/wagepay/ wptipped.shtml (last visited January 25, 2019).

**DEFENDANT'S FAILURE TO NOTIFY TIPPED EMPLOYEES**

108.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

109.    Rather than comply with the notification requirements set forth in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees a tip credit wage.  In short, Defendants failed to inform their Tipped Employees of (i) their intention to take the tip credit, and

(ii) the amount Defendant intended to claim as a tip credit.

110.    Similarly, Maryland state law requires an employer to notify an employee of the amount the employer is claiming the employee received in tips so that the employee can challenge that amount before the Commissioner.  *See* Md. Code Ann., Labor & Emp't § 3-419(b).

111.    District courts across the country have held that where an employer fails to satisfy any one of the notification requirements, including paying employees for all hours worked, that employer forfeits the tip credit and must pay the employee the full minimum wage.

112.    Indeed, Plaintiff does not ever recall being notified by Defendants of the amount of tip credit Defendants intended to claim, nor when that amount changed what the new amount claimed as a tip credit would be.

113.    To the best of Plaintiff's recollection, when she was hired she recalls only being told that she would be paid bi-weekly and what the cash wage from Defendants would be.

114.    Moreover, Defendants never provided written notice whenever the Maryland minimum wage increased and thus the amount of the tip credit Defendants claimed changed. This was in contravention of applicable regulations, including 29 C.F.R. § 516.28(A)(3).

115.    Further, Defendants encouraged Tipped Employees to share their tips with "Expo" employees – employees tasked with working in the kitchen area (aka back of the house) to ensure trays of food bound for a customer's table were complete, accurate, and presentable.

116.    It is well-settled law that having a back of the house employee (such as an expo person) share in the tips renders the tip pool illegal.

117.    As set forth above, failing to permit an employee to keep all tips received (except for a valid tip pool) nullifies the tip credit provisions of both the FLSA and MWHL.  *See, e.g.,* 29 U.S.C. § 203(m)(2)(A)(ii); Md. Code Ann., Labor & Emp't § 3-419(a)(1)(iii).

118.    Plaintiff alleges that each of the above actions was done willfully by Defendants.

**DEFENDANTS' OVERTIME VIOLATIONS**

119.    As set forth above, Defendants failed to pay Plaintiff full premium overtime compensation for hours worked in excess of 40 in a work week.

120.    Upon information and belief, Defendants' policy and/or practice of not paying premium overtime compensation applied to other Tipped Employees when they worked in excess of 40 in a work week.

121.    Under the FLSA and MWHL, an employer must pay its employees for all hours worked and premium overtime compensation for all hours worked in excess of forty.

**DEFENDANTS' POLICIES/PRACTICES FOR UNRELATED WORK/EXCESSIVE SIDE WORK**

122.    The FLSA and Maryland state law recognize that individuals employed in tipped occupations, such as the Tipped Employees here, often *engage* in more than one *occupation* -- one

18

where the tipped employee customarily receives tips and one where the tipped employee does not.

123.    Indeed, applicable FLSA regulations, specifically 29 C.F.R. § 531.56, provides that when a tipped employee is employed in "dual jobs", one where he/she would customarily receive a tip and one where he/she would not, the employer is not entitled to take the tip credit for time spent engaged in the non-tipped occupation. *See* 29 C.F.R. § 531.56.

124.    As Plaintiff's experience makes plain, Defendants required Tipped Employees to regularly perform non-tip generating work including, but not limited to, cleaning the restaurant, wiping down trash cans, and wiping down doors and walls.

125.    Despite performing such work that does not customarily receive a tip (as none could be generated due to the restaurant being closed to the public), Defendants nonetheless took a tip credit for such time.

126.    In addition, Defendants also violated applicable wage and hour laws by enforcing a policy or practice of requiring Tipped Employees to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

127.    Indeed, based on her job duties detailed above, Plaintiff estimates that she regularly spent in excess of 20% of her time performing "side work" while on duty as a server.  The precise amount of this side work, Plaintiff believes can be determined through a review of Defendants' time records for Plaintiff and the sales receipts associated with Plaintiff for each day worked.

128.    Despite this excessive amount of "side work," Plaintiff never recalls her hourly wage being raised to the full minimum wage to account for such time performing said excessive side work.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

129.    Plaintiff brings this action on behalf of the Collective Class and Collective OT Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the MD State Class and MD OT Class for claims under Maryland State Laws.

130.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to Maryland State Laws may be pursued by all similarly-situated persons who do not opt-out of the MD State Class and/or MD OT Class pursuant to Fed. R. Civ. P. 23.

131.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are over 50 individuals in each of the Classes.

132.    Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

133.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked as Tipped Employees for Defendants and were subject to the same compensation policies and practices.

134.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)      whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)      whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint;

(d)      whether Defendants failed to pay premium overtime compensation for all hours worked in excess of forty in a workweek; and

(e)      whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

135.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

136.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

137.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

138.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the MWHL.

21

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

139.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

140.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

141.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

142.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

143.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage without fulfilling the notification requirements of the FLSA.

144.    Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

145.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

146.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates

by reference the paragraphs above as if they were set forth again herein.

147.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying said employees at the sub-minimum wage, tip credit rate.

148.    Examples of such non-tipped labor unrelated to the primary duties of Tipped Employees includes, but are not limited to, wiping down trash cans; sweeping the floors; cleaning customers' booths; restocking items; rolling silverware; scrubbing down chair and table legs.

149.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the full minimum wage for this work, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

150.    Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

151.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

152.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates

by reference the paragraphs above as if they were set forth again herein.

153.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor related to their tipped occupation for substantial and unreasonable amounts of time in excess of twenty percent (20%) of their regular workweek, and at times that are not contemporaneous to direct-service duties, while paying said employees at the sub-minimum wage, tip credit rate.

154.    Examples of such non-tipped labor related to the primary duties of Tipped Employees includes, but are not limited to, making iced tea; making coffee; stocking ice bins; and rolling silverware.

155.    Defendants required Plaintiff and members of the Collective Class to perform such related but non-tipped work for substantial and unreasonable period of times prior to waiting on any customers, after waiting on last customers, prior to the restaurants' opening for business and following the restaurants' close for business.

156.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the full minimum wage for this work, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

157.    Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

158.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid

wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

<u>**FOURTH CLAIM FOR RELIEF**</u>
**FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

159.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

160.    Pursuant to Defendants' policies, rather than pay Tipped Employees the proper overtime compensation for all hours worked in excess of forty in a workweek, Defendants chose to pay Plaintiff and other Tipped Employees only the straight minimum wage for such hours worked. In effect, Defendants' policy was to avoid paying premium overtime compensation.

161.    Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

162.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid overtime at the weighted average rate; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

<u>**FIFTH CLAIM FOR RELIEF**</u>
**MARYLAND MINIMUM WAGE VIOLATIONS**
**(On Behalf of the MD State Class)**

163.    Plaintiff, on behalf of herself and the members of the MD State Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

164.    At all relevant times, Plaintiff and the MD State Class were "Employees" and

Defendants were their "Employer" within the meaning of the MWHL.

165.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of member of the MD State Class within the meaning of the MWHL.

166.     Defendants were obligated to pay Plaintiff and the members of the MD State Class at least the minimum wage for each hour worked, pursuant to § 3-413 of the MWHL.

167.     Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the Maryland mandated minimum wage, Defendants improperly took a tip credit and only paid a tip credit wage.  The result of this conduct was that Tipped Employees were paid at a rate below the Maryland minimum wage.

168.     At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements set forth in § 3- 419 of the MWHL in order for Defendants to claim the tip credit.

169.     As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the MD State Class less than the Maryland minimum wage for all hours worked.

170.     Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the MD State Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees, and costs.

**SIXTH CLAIM FOR RELIEF**
**MARYLAND OVERTIME WAGE VIOLATIONS**
**(On Behalf of the MD OT Class)**

171.     Plaintiff, on behalf of herself and the MD OT Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

172.     Pursuant to Defendants' policies, rather than pay Tipped Employees premium

overtime compensation in excess of forty (40) in a given workweek, Defendants paid Tipped Employees at their regularly hourly rate.

173.   As a result, Defendants failed to pay Plaintiff and the MD OT Class the proper overtime wages to which they are entitled under the MWHL and the supporting Maryland Department of Labor Regulations.

174.   Through their knowing or intentional failure to pay Plaintiff and members of the MD OT Class overtime wages for hours worked in excess of 40 per workweek, Defendants willfully violated Md. Code Ann., Labor & Emp't § 3-420, *et seq.*, and the supporting Maryland Department of Labor Regulations.

175.   Due to Defendants' willful violations of the MWHL, Plaintiff, on behalf of herself and the members of the MD OT Class, are entitled to recover from the Defendants compensation for unpaid overtime hours worked, liquidated damages, and reasonable attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**MARYLAND WAGE PAYMENT AND COLLECTION LAW VIOLATIONS**
**(On Behalf of the MD State Class)**

176.   Plaintiff, on behalf of herself and the members of the MD State Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

177.   The MWPCL provides in relevant part: Each employer:

      (i)      Shall set regular pay periods; and

      (ii)     Except as provided in paragraph (2) of this subsection, shall pay each employee at least once in every 2 weeks or twice in each month.

Md. Code Ann., Labor & Employment, §3-502.

178.   Plaintiff and members of the MD State Class are/were employees of Defendants within the meaning of the MWPCL and, as such, are entitled to timely payment of wages due to

them.

179.   Defendants are an employer within the meaning of the MWPCL.

180.   More than two weeks have elapsed from the date on which Defendants were required to have paid the wages owed to the Plaintiff and to the MD State Class members for the full minimum wage due and owing for each hour worked and, where applicable, appropriate compensation for hours worked in excess of forty (40) in a workweek.  Defendants have no bona fide reason for withholding the wages owed to the Plaintiff and to the MD State Class members.

181.   Further, Md. Code Ann., Labor & Employment, §3-505 requires an employer to pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

182.   Members of the MD State Class who ceased employment with Defendants more than two weeks ago are entitled to unpaid compensation, but to date have not received such compensation.

183.   Pursuant to Md. Code Ann., Labor & Employment, §3-507.2, due to the Defendants' violations set forth above, Plaintiff, on behalf of herself and the members of the MD State Class, are entitled to recover three times the unpaid wages, attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Classes respectfully requests the Court grant the following relief:

A.   Designation of this action as a collective action on behalf of the Collective Class and Collective OT Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.      Designation of the action as a class action under F.R.C.P. 23 on behalf of the MD State Class and MD OT Class;

C.      Designation of Plaintiff as representative of the Classes;

D.      Designation of Plaintiff's counsel as class counsel for the Classes;

E.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, MWHL, and MWPCL;

F.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      Pre-judgment interest and post-judgment interest;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues so triable.


Dated: June 28, 2022                              Respectfully submitted,


                                                  */s/   Steven T. Webster*
                                                  Steven T. Webster (VSB No. 31975)
                                                  WEBSTER BOOK LLP
                                                  300 N. Washington Street, Suite 404
                                                  Alexandria, Virginia 22314
                                                  Tel. and Fax: (888) 987-9991
                                                  swebster@websterbook.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
        rgray@cwglaw.com

*To Be Admitted Pro Hac Vice*

***Attorneys for the Plaintiff and the
Proposed Classes***