**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| RHONDA KING, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SHARP HOLDING, INC., ROBERT SHARP, and DOE DEFENDANTS 1-10,<br><br>        Defendants. | Civil Action No. 1:22-cv-00728-PTG-JFA |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**<u>COLLECTIVE AND CLASS ACTION SETTLEMENT AND RELEASE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..iii

I.  INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND AND STATUS OF THE LITIGATION ........................... 3

III.  SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT ......................... 5

    A.  THE PROPOSED SETTLEMENT CLASS............................................... 5

    B.  THE PROPOSED CLASS NOTICE ...................................................... 6

    C.  MONETARY TERMS ..................................................................... 8

    D.  DISMISSAL AND RELEASE OF CLAIMS .......................................... 9

    E.  PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL ............... 10

IV.  ARGUMENT.............................................................................................. 11

    A.  THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED............. 11

        1.  Standard of Approval of FLSA Settlements .............................. 12

        2.  Standard for Approval of Class Action Settlements ................. 14

    B.  THE PROPOSED SETTLEMENT IS FAIR .................................................... 16

        1.  The Proposed Settlement is the Product of Good Faith Bargaining at Arm's Length ......................................................................... 16

        2.  This Case is at an Appropriate Posture for Settlement ............... 17

        3.  Extensive and Sufficient Discovery Has Been Conducted ............ 17

        4.  Plaintiff's Counsel is Qualified and Experienced in Similar Litigation ... 18

        5.  Pertinent Circumstances Surrounding the Negotiations ............. 19

        6.  The Proposed Settlement is Adequate ...................................... 20

i

C.    THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS.... 22

D.    THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 CLASS FOR SETTLEMENT PURPOSES ................................................................................................. 24

    1.    Fed. R. Civ. P. 23(a) Requirements are Satisfied ..................................... 24

    2.    The Rule 23 Class Should Be Certified Under Rule 23(b)........................ 28

E.    THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED ...... 30

F.    CONNOLLY WELLS & GRAY, LLP AND WEBSTER BOOK LLP SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT CLASS ............................. 30

G.    THE PROPOSED ATTORNEYS' FEES ARE REASONABLE ........................................... 31

V.    CONCLUSION................................................................................................ 32

## **TABLE OF AUTHORITIES**

**Cases**                                                                              **Page(s)**

*Acosta v. Mezcal, Inc.*,
   No. 1:17-CV-00931, 2019 WL 2550660 (D. Md. June 20, 2019)..........................................20

*Alloways v. Cruise Web, Inc.*,
   No. 8:17-CV-02811, 2019 WL 1902813 (D. Md. Apr. 29, 2019).....................................21, 25

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................28, 29

*Austin v. Pennsylvania Dep't of Corrs.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ....................................................................................16

*Barnett v. W.T. Grant Co.*,
   518 F.2d 543 (4th Cir. 1975) .............................................................................................27

*Baust v. City of Virginia Beach*,
   574 F. Supp. 3d 358 (E.D. Va. 2021) ...........................................................................11, 13

*Benway v. Resource Real Estate Servs., LLC*,
   No. 05-cv-3250-WMN, 2011 WL 1045597 (D. Md. Mar. 16, 2011)....................................11

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ........................................................................................16, 17

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir.1998) ..............................................................................................26

*Chrismon v. Meadow Greens Pizza*,
   No. 5:19-cv-155, 2020 U.S. Dist. LEXIS 119873 (E.D.N.C. July 7, 2020)...........................13

*Cuthie v. Fleet Reserve Ass'n*,
   743 F. Supp. 2d 486 (D. Md. October 18, 2010) ...................................................................29

*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*,
   375 F.2d 648 (4th Cir. 1967) .............................................................................................25

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) .............................................................................................26

*DeWitt v. Darlington Cnty., S.C.*,
   No. 4:11 CV-00740-RBH, 2013 WL 6408371 (D.S.C. Dec. 6, 2013)...................................12

*Edelen v. Am. Residential Servs., LLC*,
   No. 8:11-CV-02744, 2013 WL 3816986 (D. Md. July 22, 2013) ....................................26, 31

*Epps v. Scoffolding Sols., LLC*,
   No. 2:17-cv-562, 2019 U.S. Dist. LEXIS 217413 (E.D. Va. Dec. 11, 2019) .........................13

*Fisher v. Va. Elec. & Power Co.*,
   217 F.R.D. 201 (E.D. Va. 2003) ...............................................................................26, 27

*Gaskin v. Pennsylvania*,
   389 F. Supp. 2d 628 (E.D. Pa. 2005) ...........................................................................16

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .....................................................................................15

*Graham v. Famous Dave's of Am., Inc.*,
   No. 19-cv-0486, 2020 U.S. Dist. LEXIS 174696 (D. Md. Sept. 23, 2020) ......................19

*Grice v. PNC Mortg. Corp. of Am.*,
   No. 8:97-CV-03084, 1998 WL 350581 (D. Md. May 21, 1998).......................................16

*Haney v. Genworth Life Ins. Co.*,
   No. 3:22cv55, 2023 U.S. Dist. LEXIS 15589 (E.D. Va. Jan. 30, 2023)...............................23

*Hatzey v. Divurgent, LLC*,
   No. 2:18-CV-191, 2018 WL 5624300 (E.D. Va. Oct. 9, 2018)...........................................31

*Holsey v. Armour & Co.*,
   743 F.2d 199 (4th Cir. 1984) .....................................................................................24

*Jeffreys v. Commc'ns Workers of Am., AFL CIO*,
   212 F.R.D. 320 (E.D. Va. 2003) ...........................................................................25, 26, 27

*In re Jiffy Lube Secs. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ................................................................................17, 18

*Jones v. Dominion Res. Servs.*,
   601 F. Supp. 2d 756 (S.D. W. Va. 2009) .......................................................................31

*LaFleur v. Dollar Tree Stores, Inc.*,
   189 F. Supp. 3d 588 (E.D. Va. 2016) ...........................................................................12

*Leigh v. Bottling Group, LLC*,
   2012 WL 460468 (D. Md. Feb. 10, 2012) ......................................................................32

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   No. 1:08-cv-1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ..............................11, 12, 13

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
   Pracs. & Prod. Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020) ................................................................................15, 17

*McCune v. Faneuil Inc.*,
    No. 4:23cv41, 2024 U.S. Dist. LEXIS 144184 (E.D. Va. 2024) ............................................31

*Mendoza v. Mo's Fisherman Exchange, Inc.*,
    No. 1:15-CV-01427, 2016 WL 3440007 (D. Md. June 22, 2016).........................................29

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D.Md. 1983) ...................................................................................11, 20

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
    237 F.R.D. 551 (D. Md. 2006)........................................................................................25, 27

*In re Montgomery Cty. Real Est. Antitrust Litig.*,
    83 F.R.D. 305 (D. Md. 1979)................................................................................................17

*In re NeuStar, Inc. Sec. Litig.*,
    No. 1:14CV885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ............................................18

*Patel v. Barot*,
    15 F. Supp. 3d 648 (E.D. Va. 2014) ...............................................................................12, 13

*Riddle v. City of Anderson, S.C.*,
    No. 8:12-CV-03480-TMC, 2015 WL 12830369 (D.S.C. Jan. 26, 2015) ...............................12

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009) ...............................................................................................31

*Rosales v. Rock Spring Contracting LLC, et al.*,
    No. 3:23CV407 (RCY), 2024 WL 1417955 (E.D. Va. Apr. 2, 2024) ..............................13, 31

*In Re Royal Ahold N.V. Securities & ERISA Litigation*,
    No. 103-MD-01539, 2006 WL 132080 (D. Md. Jan. 9, 2006)................................................11

*Singleton v. Domino's Pizza, LLC*,
    976 F.Supp.2d 665 (D. Md. 2013) ..................................................................................19, 31

*Stanley v. Central Garden and Pet Corp.*,
    891 F.Supp.2d 757 (D. Md. 2012) ......................................................................................25

*Starr v. Credible Behavioral Health, Inc.*,
    No. 20-2986 PJM, 2021 WL 2141542 (D. Md. May 26, 2021) ............................................32

*Stillmock v. Weis Markets, Inc.*,
    385 Fed.Appx. 267 (4th Cir. 2010)......................................................................................28

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) .......................................................................................31

*Taylor v. Progress Energy, Inc.*,
    415 F.3d 364 (4th Cir. 2005) ................................................................................12

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ................................................................................24

*In re Titanium Dioxide Antitrust Litig.*,
    No. 1:10-CV-00318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ........................15

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) .................................................................................15

*Wintjen v. Denny's, Inc*.,
    No. 2:19-CV-00069-CCW, 2021 WL 5370047 (W.D. Pa. Nov. 18, 2021) ...........18

**Statutes**

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ............................................ *passim*

Maryland Wage and Hour Law ................................................................................ *passim*

Maryland Wage Payment and Collection Law ....................................................1, 2, 6

**Other Authorities**

Fed. R. Civ. P. 23(a) ....................................................................................24, 25, 26, 27

Fed. R. Civ. P. 23(b) ....................................................................................24, 28, 29

Fed. R. Civ. P. 23(c) ..............................................................................................30

Fed. R. Civ. P. 23(e) ............................................................................................ *passim*

Fed. R. Civ. P. 23(g) ........................................................................................18, 30

## I.    INTRODUCTION

Plaintiff Rhonda King ("Plaintiff" or "King"), on behalf of herself and all others similarly situated, by and through her counsel, hereby respectfully moves the Court for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the Collective and Class Action Settlement And Release Agreement ("Settlement Agreement")[1] (Copy attached as Exhibit 1 to Declaration of Gerald D. Wells ("Wells Decl.")). Plaintiff, with the consent of Defendants Sharp Holding, Inc. and Robert Sharp (collectively, "Defendants"), requests that the Court enter an Order (the "Preliminary Approval Order") that would:

1)    Grant preliminary approval of the proposed Settlement;

2)    Reaffirm certification, for settlement purposes only and pursuant to the terms of the Settlement Agreement, of the Settlement Class. As set forth in the Settlement Agreement, the Settlement Class consists of the "Rule 23 Class and the members of the FLSA Collective";

3)    Approve the form and content of, and direct the distribution of the Class Notice;

4)    Appoint the law firms of Connolly Wells & Gray, LLP ("CWG") and Webster Book, LLP ("WB") as Class Counsel for the Settlement Class;[2] and

5)    Set a date for the Final Approval Hearing within 75 and 90 calendar days after entry of the date the Court enters a Preliminary Approval Order.

Plaintiff, by and through Class Counsel, has agreed to settle the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"), claims of the Rule 23 Class and the claims of the FLSA Collective, asserted against Defendants. The releases

---

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

[2] The Court previously appointed CWG and WB as class counsel in its Order granting class certification. *See* ECF No 31.

1

associated with the Settlement are set forth in the Class Notice that will be sent to all affected individuals and set forth in detail in the Settlement Agreement which will be publicly available via a website established by the Claims Administrator. As the Court is aware, Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501 *et seq*. FLSA and MWHL by systematically and willfully denying their servers certain wages due and owing through Defendants' failure to provide complete and accurate tip credit notification after there was an increase in the applicable minimum wage rate.

The Parties anticipate that the Class Notice will be sent to over two hundred Putative Settlement Class Members, a number that includes the individuals in the Rule 23 Class and the individuals who previously elected to opt-into the FLSA Collective. After vigorous, arms-length settlement negotiations, which included a full day settlement conference with Magistrate Judge John F. Anderson, and multiple follow up calls amongst counsel and email correspondence with Judge Anderson, the Parties have now reached a settlement, subject to the Court's approval. While Defendants continue to dispute the viability of the claims asserted and do not concede liability, Defendants do not oppose Plaintiff's motion, and support preliminary approval of the Settlement Agreement, certification of the proposed Settlement Class, and approval of the Class Notice to members of the Settlement Class.

As set forth below, the proposed Settlement is the product of fully-informed, arm's length, and intense negotiations. The underlying Settlement satisfies all the prerequisites for preliminary approval and certification of the proposed Settlement Class. The proposed Settlement is a fair, reasonable, and adequate resolution which recognizes the risks each side faced had the Action

continued to trial. For these reasons, and those fully articulated below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

## II. FACTUAL BACKGROUND AND STATUS OF THE LITIGATION

Plaintiff commenced this litigation on June 29, 2022, when, on behalf of a putative class and collective, she filed her complaint against Defendants asserting claims under the FLSA and the MWHL, seeking recovery of alleged unpaid wages, liquidated damages, and attorneys' fees and costs. (*See* ECF No. 1). Specifically, Plaintiff asserted two theories of liability under each law: (1) that IHOP failed to give her and other servers adequate notice of its intention to claim a tip credit for subminimum hourly wages paid to individuals who worked at Defendants' IHOP Restaurants as a server in the states of Maryland, New Jersey, Ohio or the Commonwealth of Virginia in Maryland after there was an increase in the minimum wage rate ("Notice Claim"); and (2) that IHOP failed to pay servers the full minimum wage for time spent performing either non-tipped duties and/or excessive "side work" duties ("80/20 Claim"). Defendants denied liability and asserted various defenses in their answer to Plaintiff King's Complaint. (*See* ECF No. 10).

The Parties agreed to a bifurcate the claims and focus exclusively on the alleged tip credit notice violations set forth in the Notice Claim. On April 13, 2023, the Court granted conditional collective certification of Plaintiff's FLSA tip credit notice claim and Rule 23 class certification of Plaintiff's Maryland state claim. (*See* ECF No. 31). After receiving a stipulation by the Parties, the Court granted final collective certification of Plaintiff's tip credit notice claim on January 4, 2024. (See ECF No. 67).

On May 16, 2024, the Court partially granted summary judgment to Plaintiff and the Classes. (*See* ECF No. 75). Specifically, the Court granted summary judgment as to Plaintiff's and the Classes' FLSA and Maryland Notice Claim, finding Defendants violated applicable law "by

failing to provide members of the Classes with updated tip credit information following a change in the applicable minimum wage." *Id*. The Court did not grant summary judgment as to Plaintiff's assertion that Defendants violated applicable laws by "failing to produce any written tip credit notification" forms for certain individuals and "providing belated tip credit notification to certain class members after they had already begun working for" Defendants. *Id*. From the bench, the Court reasoned that Plaintiff did not provide Defendants with sufficient notice of these two issues. The Court also reserved ruling on Plaintiff's claim for liquidated damages under the FLSA and Maryland state law. (*See* ECF No. 75).

In the Fall of 2024, Defendants for the first time indicated that they had provided certain notice of updated tip credit information to individuals in January of 2023 and to individuals employed in Montgomery County, Maryland in July/August of 2024. In response to these revelations, which directly countered representations made by Defendants to the Court in October of 2024 (*See* ECF No. 76), Plaintiff filed a motion in limine to exclude this information and a motion to show cause as to why Defendants did not provide this information earlier. (*See* ECF Nos. 79, 80). After briefing, the Court held a hearing on these matters on December 19, 2024. (See ECF No. 87). At the hearing the Court indicated that it would take the matter under advisement but that it would either exclude this material completely or reopen discovery at Defendants' expense. Thereafter, the Parties promptly notified the Court of their desire to engage with the Magistrate in a settlement conference. (*See* ECF No. 88).

On December 20, 2024, the Court entered an order staying the matter for forty-five (45) days so the parties could engage in settlement discussions. (*See* ECF No. 89). On January 17, 2025, Defendants' original defense counsel filed a motion to withdraw as counsel of record. (*See* ECF No. 90). On January 31, 2025, the Court issued an Order holding the case in abeyance until

February 24, 2025. (*See* ECF No. 98). On February 14, 2025, Defendants' present counsel entered their appearance. (*See* ECF No. 101). On March 27, 2025, the Court issued an order setting a settlement conference for April 16, 2025. (*See* ECF 110).

After substantial arm's-length settlement negotiations, Plaintiff King and Defendants reached a settlement to resolve the Rule 23 Class and Collective Class Notice Claims. In addition, while not addressed in the Court's granting of summary judgment, the Parties have also agreed to an automatic payment to all Settlement Class Members for any 80/20 claim they may have had.

Defendants continue to deny any liability or wrongdoing of any kind associated with any and all claims alleged in the Action, and, for any purpose other than settling the claims of the FLSA Collective and Rule 23 Class, further deny that this Action is appropriate for collective or class action treatment. Defendants contend, among other things, that it complied at all times with all applicable state and federal laws. Defendants are entering this Settlement Agreement to eliminate the burden, risk, and expense of further litigation of the claims of the FLSA Collective and Rule 23 Class. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants or any of the Released Persons of any fault, liability, or wrongdoing, which Defendants expressly deny.

## III.    SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The key components of the Settlement are set forth below, and a complete description of the terms and conditions of the Settlement are contained in the Settlement Agreement, and contemporaneous documents, which is attached to the Wells Decl. as Exhibit 1.

### A.    THE PROPOSED SETTLEMENT CLASS

Through the Settlement Agreement, the Parties stipulate, for settlement purposes only, to certification of the Rule 23 Class consisting of Plaintiff and all members of the class certified by the Court under Fed. R. Civ. P. 23 on April 13, 2023 (ECF No. 31). Excluded from this class,

5

however, are all individuals who submit timely and effective Request for Exclusion forms by the Bar Date. Also included in the Settlement Class are all individuals in the FLSA Collective Class as set forth in the Court's Order of January 4, 2024 and who do not affirmatively elect to withdraw their Consent to Sue form with the Court prior to the Bar Date. Should the Court grant final approval to the Settlement, by operation of law and as set forth in the Section 5.1 of the Settlement Agreement, all Rule 23 Class members who have not effectively excluded themselves from this Settlement shall be deemed to have released any MWHL and MWPCL claims from June 29, 2019 through November 17, 2024 for claims that were alleged or that could have been alleged in the Complaint. Similarly, all FLSA Collective members shall be deemed to have released any applicable FLSA wage claim relating to their employment with Defendants during their Class Period that was alleged or could have been alleged in the Complaint.

### B. THE PROPOSED CLASS NOTICE

The Settlement Agreement provides for dissemination of a Class Notice. The Class Notice will provide Putative Settlement Class Members with all pertinent information regarding the Settlement as well as the contact information for Class Counsel. *See* Settlement Agreement at § 4.9.

No more than fourteen (14) days after the Court enters the Preliminary Approval Order, Defendants shall provide the Claims Administrator with the following information for each of the Putative Settlement Class Members: Name, Social Security Number, the dates employed by Defendants (including, where applicable, the dates of termination and/or rehire), and any required deductions (*e.g.*, wage garnishments) in Defendants' records. *See* Settlement Agreement at § 4.6. Defendants shall also provide any deductions to a Putative Settlement Class Member's wages that are maintained in their records and were current as of the end of the Class Period, such as wage garnishments, tax liens, and child support. At the same time, Defendants will also provide Class

Counsel with a list, in electronic form, containing the following information for each server during the Class Period: name, last known address, and email address (if Defendants have it). *Id*.

The Claims Administrator shall provide Class Notice within fourteen (14) calendar days after the Class Administrator receives the class list and the data required to perform the preliminary calculations. *See* Settlement Agreement at § 4.9(A). The Claims Administrator will (among other things) provide estimated settlement payment amounts in the Class Notice. *Id*. at § 4.8(A). The Claims Administrator, wherever practicable, will disseminate Class Notice via mail, and shall establish a settlement website (or a link on their existing website) to assist in providing Putative Settlement Class Members with information regarding the Settlement. If the Claims Administrator has a Putative Settlement Class Member's email address, the Class Notice shall also be emailed to that individual. The website may include, among other things, the Complaint, the Settlement Agreement, Class Notice, and any orders entered by the Court regarding the Settlement subsequent to granting Preliminary Approval.

The form and method of Notice agreed to by the Parties satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(B). The proposed Class Notice describes in plain English: (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) the Service Payment for Plaintiff; (iv) the procedure and timing for objecting to the Settlement; and (v) the date and place for the Final Approval Hearing.

Should the Court grant final approval of the Settlement, Settlement Class Members shall automatically receive their portion of the Settlement by check, mailed by the Claims Administrator within fifteen calendar (15) days after the receiving the Settlement Payment from Defendants. *See* Settlement Agreement at § 4.13(B).

### C.    MONETARY TERMS

The proposed "Settlement Amount" consists of cash in the amount of Two Million Fifteen Thousand Dollars ($2,015,000.00). *See* Settlement Agreement at § 2.57. The Settlement Amount shall be distributed as follows: the Claims Administrator shall make deductions from the Settlement Amount for (i) the anticipated amount of attorneys' fees to be requested (one-third (1/3) of the Settlement Amount), plus estimated expenses of Class Counsel, (ii) the maximum Service Payment sought for the Plaintiff, (iii) the estimated fees and expenses of the Claims Administrator and (iv) the total of the 80/20 Payments for all Putative Settlement Class Members *Id*. at § 4.8(A)(1). The amount remaining after these deductions (the "Net Settlement Amount) shall be distributed to Class Members in accordance with the formula for determining the "Settlement Payment" set out in the Settlement Agreement. *See* Settlement Agreement, at §4.8. The proposed formula for distributing the Settlement's proceeds prorates the recovery among Putative Settlement Class Members according to how many Tip Credit Hours they are recorded as having worked as a server. The Claims Administrator will make all legally mandated payroll deductions prior to distributing the settlement payments to Settlement Class Members. Importantly, all Settlement Class Members will receive money in connection with this Settlement.

In accordance with the Settlement Agreement, the Class Notice shall include estimated payment amounts a Putative Settlement Class Member shall receive if they elect to remain in the Settlement Class (that is, not exclude themselves from the Settlement).The Class Notice provides an estimate for each Putative Settlement Class Member of how much they will receive under the Settlement if everyone participates and all fees and expenses are approved. To determine this amount, after making all necessary assumed deductions, the Claims Administrator will total the amount of Tip Credit Hours worked during the Class Period as reflected in the Payroll Data. This number will be referred to as the "Estimated Individual Tip Credit Amount." The Estimated

Individual Tip Credit Amounts for all Putative Settlement Class Members will then add together by the Claims Administrator to determine the "Estimated Total Tip Credit Amount." The Estimated Net Settlement Amount will then be divided by the Estimated Total Tip Credit Amount. The Claims Administrator will then multiply the resulting fractional amount by each Estimated Individual Tip Credit Amount and add in the 80/20 Payment to determine that Putative Settlement Class Member's "Estimated Settlement Payment." Notably, each Settlement Class Member will receive $50 to cover the 80/20 claim alleged in the Complaint. *See* Settlement Agreement at § 4.8(A)(2). The formula for distributing the Settlement Amount is set forth in the Settlement Agreement at § 4.8.

In accordance with the Settlement Agreement, Class Counsel will seek the Court's approval for payment of a "Service Payment" to the Plaintiff in the amount of $7,500. *See* Settlement Agreement at § 4.17(A). This Service Payment shall be in addition to the distribution received from the Net Settlement Amount, as described above, and shall not be opposed by Defendants. The Class Notice apprises Putative Settlement Class Members of this request. In short, the proposed Class Notice apprises Putative Settlement Class Members of all material terms of the Settlement, as well as why Plaintiff believes the proposed settlement is appropriate.

Settlement Class Members shall have 180 days to negotiate their settlement check and the deadline will be included in the information sent with the check. Any checks not properly negotiated by a Settlement Class Member within 180 days of issuance shall be deemed voided. *See* Settlement Agreement at § 4.13. All unclaimed funds due to voided checks will be considered part of the *Cy Pres Distribution*.

### D. DISMISSAL AND RELEASE OF CLAIMS

Upon the Effective Date, individuals who are Rule 23 Class Members and FLSA Collective Members shall be deemed to have forever released any and all federal and Maryland wage-related

claims against Defendants. *See* Settlement Agreement at § 5.1. Individuals who are Rule 23 Class Members, but not FLSA Collective Members shall not be prevented by this Settlement from pursuing their FLSA claims. If an individual is only a member of the FLSA Collective, their release and covenants only apply to their FLSA claims. Nothing in this Settlement Agreement shall be construed to foreclose a member of the FLSA Collective from recovering for hours worked outside of the FLSA Collective Class Period. *Id.* at § 5.1 (E). As noted above, the releases are fully described in the Settlement Agreement and individuals are apprised of the ramifications of the proposed Settlement in the Class Notice.

### E.    PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL

Plaintiff, with Defendants' consent, proposes that along with granting preliminary approval of the Settlement Agreement, the Court adopt the schedule set forth below in its Preliminary Approval Order, to allow the Parties sufficient time to effectuate the various steps in the settlement approval process under the Settlement Agreement.

### EVENT TIMING

1.    **Mailing of Class Notices:**    Defendants must provide Putative Settlement Class Member information to Claims Administrator, as set forth in Paragraph 4.6 of the Settlement Agreement, no more than fourteen (14) calendar days after the Preliminary Approval Order is entered. The Claims Administrator will disseminate the Notice Packet within fourteen (14) calendar days after receiving the Putative Settlement Class Member information.

2.    **Deadline for filing Objections to the Settlement:** Forty-five (45) days after Class Notices are mailed. *See* Settlement Agreement at § 2.4.

3.    **Final Approval Hearing:** Within seventy-five (75) to ninety (90) days after entry of the Preliminary Approval Order.

As set forth below, Plaintiff submits, with Defendants' consent, that the Settlement satisfies all the criteria for preliminary approval and falls well within the range of reasonableness. Accordingly, Plaintiff requests that the Court grant the requested relief.

## IV.    ARGUMENT

### A.    THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

As an initial matter, "[l]itigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Id*.; *see also Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) (same).

Federal courts must approve class action settlements and ensure that settlement class members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval is granted when a proposed settlement is "within the range of possible approval," *Benway v. Resource Real Estate Servs., LLC*, No. 05-cv-3250-WMN, 2011 WL 1045597, *4 (D. Md. Mar. 16, 2011), and the "principal legal effect of [an order grant preliminary approval] is to allow notice to issue to the potential beneficiaries of the Settlement," *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1381 (D.Md. 1983). Moreover, in determining whether a settlement warrants preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement" and "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384; *see also In Re Royal Ahold N.V. Securities &*

11

*ERISA Litigation*, No. 103-MD-01539, 2006 WL 132080 at *19 (D. Md. Jan. 9, 2006) (granting preliminary approval where Settlement "appear[ed] on its face to be fair. . . and to fall well within the range of possible final approval.").

As set forth below, preliminary approval of this proposed Settlement is appropriate as it satisfies all criteria for preliminary approval. Accordingly, Plaintiff requests that the Court grant the requested relief.

### 1.     Standard of Approval of FLSA Settlements

All FLSA settlements must be approved by either the United States Department of Labor or a federal district court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). A proposed FLSA settlement should be approved if it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). In determining whether a settlement is "fair, adequate, and reasonable," courts must remain cognizant that there exists a "'strong presumption in favor of finding a settlement fair.'" *Lomascolo*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (quoting *Camp v. Progressive Corp.*, No. 01-cv-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)); *see LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016).

"Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements." *DeWitt v. Darlington Cnty., S.C.*, No. 4:11 CV-00740-RBH, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013); s*ee also, Riddle v. City of Anderson, S.C.*, No. 8:12-CV-03480-TMC, 2015 WL 12830369, at *5 (D.S.C. Jan. 26, 2015) ("Irrespective of the test, approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements."). Additionally, "[n]o hearing is

needed to investigate the fairness" of FLSA collective action settlements." *Rosales v. Rock Spring Contracting LLC, et al*., No. 3:23CV407 (RCY), 2024 WL 1417955, at *4 (E.D. Va. Apr. 2, 2024).

To determine whether a settlement is fair, the court considers: (1) The extent of discovery that has taken place; (2) the stage of the proceedings including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of settlement in relation to the potential recovery. *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate, and reasonable." *Lomascolo*, 2009 WL 3094955 at *10 (E.D. Va. June 23, 2009) (internal quotation omitted); *see also Chrismon v. Meadow Greens Pizza*, No. 5:19-cv-155, 2020 U.S. Dist. LEXIS 119873 at *9 (E.D.N.C. July 7, 2020) ("There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation."). A FLSA settlement should be approved if it "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Baust*, 574 F. Supp. 3d at 363 (quoting *Minsterman v. S.L. Nusbaum Realty Co*., No. 2:10-cv-303, 2011 U.S. Dist. LEXIS 156727, at *2 (E.D. Va. Jan. 21, 2011)). The court's role at a settlement is "a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate." *Epps v. Scoffolding Sols., LLC*, No. 2:17-cv-562, 2019 U.S. Dist. LEXIS 217413, at *6 (E.D. Va. Dec. 11, 2019) (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *28). Here, the Settlement is fair, reasonable, and adequate, and so should be approved.

It is not disputed that the Settlement Agreement resolves a bona fide dispute. Indeed, as Defendants filed an Answer to Plaintiff's Complaint denying Plaintiff's claims for unpaid wages, and also filed motions in opposition to Plaintiff's requests for conditional certification and class certification (ECF No. 26) and for partial summary judgment. (ECF No. 66). Moreover, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate its implementation. Indeed, the Settlement furthers the purposes of the FLSA by providing members of the FLSA Collective with substantial recovery for their unpaid wages that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. Lastly, proposed Class Counsel are qualified and experienced in litigation of FLSA disputes and complex class actions, such that they are more than able to protect the interests of Plaintiff and the Settlement Class. Wells Decl. at ¶¶ 19-22. Because the Settlement facilitates the FLSA and is a fair and reasonable resolution of a bona fide dispute, it should be approved as reasonable.

## 2.    Standard for Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions. When a proposed class settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"). Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. Finally, there is a settlement approval or final fairness hearing. *See* Manual for Complex Litigation § 21.632–633 (4th ed. 2004).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. Manual for Complex Litigation at § 21.62. The Fourth Circuit has developed multifactor tests (which significantly

overlap with the factors considered in Rule 23(e)) to ascertain both the "fairness" and the "adequacy"[3] of proposed class action settlements. As to fairness, the additional factors are: (1) whether the proposed settlement is the product of good faith bargaining at arm's length; (2) the posture of the case at settlement; (3) the extent and sufficiency of discovery conducted; (4) counsel's experience with similar litigation and their relevant qualifications; and (5) any pertinent circumstances surrounding the negotiations. *See In re Titanium Dioxide Antitrust Litig.*, No. 1:10-CV-00318, 2013 WL 5182093, at *3 (D. Md. Sept. 12, 2013) (citing *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-85 (D. Md. 1983)). As to adequacy, the additional factors are: (1) the relative strength of the plaintiff's claims; (2) weaknesses in the plaintiff's case, including proof-related obstacles or particularly strong defenses; (3) the cost of additional litigation; (4) defendants' ability to pay a judgment; and (5) any opposition to the settlement. *Id.* at *4

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. Manual for Complex Litigation at § 21.62. If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Thus, "[i]f the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class

---

[3] The Fourth Circuit has not adopted a test, nor enumerated factors for assessing the "reasonableness" of a proposed settlement. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Gaskin v. Pennsylvania*, 389 F. Supp. 2d 628, 630 (E.D. Pa. 2005).

Class Counsel believes the terms of the proposed settlement in this case are fundamentally fair, reasonable and adequate, especially when considering the risk, expense, complexity and delay associated with further litigation. In making its determination of these risks, the Court should give deference to the opinions of Class Counsel, who have researched the issues and are familiar with the facts of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

### B.    THE PROPOSED SETTLEMENT IS FAIR

#### 1.    The Proposed Settlement is the Product of Good Faith Bargaining at Arm's Length

The purpose of the fairness analysis is to ensure that the settlement agreement is the "result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Good faith bargaining will be found where counsel for the parties "have performed in a professional manner," and the settlement "contains favorable results for both parties, but at the same time, reflects mutual concessions." *Grice v. PNC Mortg. Corp. of Am.*, No. 8:97-CV-03084, 1998 WL 350581, at *6 (D. Md. May 21, 1998).

In the case at bar, there is no evidence of fraud or collusion occurring between counsel. The parties were vigorously represented by counsel in adversarial litigation. Moreover, the

proposed settlement is the result of protracted arm's-length negotiations, including a settlement conference with Magistrate Judge John F. Anderson. Further, as noted above, even after the settlement in principle was reached, it took weeks of additional negotiations before all the terms of the proposed settlement were finalized. The participation of Judge Anderson insured that the settlement negotiations were conducted at arm's length and without collusion between the Parties. Accordingly, this factor favors approval.

### 2.     This Case is at an Appropriate Posture for Settlement

For a settlement agreement to meet the fairness standard, the case must have been sufficiently litigated, and not premature so as to evidence collusion between party counsel. As noted above, the Parties have engaged in significant discovery and fully briefed several issues. In addition, the parties engaged in substantial motion practice, including summary judgment and class and collective certification – each of which was vigorously opposed by Defendants. Thereafter, the Parties participated in a contested mediation session with Judge Anderson. It is only with Judge Anderson's assistance that the Parties were able to reach an accord as memorialized in the present Settlement. This factor weighs in favor of approval. *See, e.g.*, *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (concluding that settlement was fair where "extensive discovery" had been conducted by time of settlement); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (upholding determination that settlement was fair, where parties had engaged in informal discovery, and made substantive concessions on both sides during negotiations).

### 3.     Extensive and Sufficient Discovery Has Been Conducted

Preliminary approval is appropriate where discovery has been, at least partially completed, such that all parties understand "the facts of the case on the merits." *In re Montgomery Cty. Real Est. Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979); *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th

Cir. 2020) (upholding fairness determination because by the time of settlement, formal discovery, including depositions of thirteen witnesses and reviewing "vast quantities of documents," had been completed). This is in accord with the second *Jiffy Lube* factor, which considers the extent of discovery. "This factor permits the Court to ensure that all parties appreciate the full landscape of their case when agreeing to enter into the Settlement." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14CV885, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015). In the instant matter, Plaintiff had more than a sufficient factual record on which to base her conclusion that the proposed Settlement is fair, reasonable, and adequate.

Through, *inter alia*, the parties extensive briefing on certification and Plaintiff's motion for summary judgment, extensive discovery has been conducted prior to the proposed settlement of this litigation, including written discovery served on all parties and the deposition of Defendants' 30(b)(6) corporate designee. Moreover, counsel for Plaintiff reviewed over 10,000 documents produced by Defendants and computed thousands of payroll records. See Wells Decl. at ¶¶ 32, 34. Accordingly, this factor also weighs in favor of approval.

### 4.    Plaintiff's Counsel is Qualified and Experienced in Similar Litigation

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel – Connolly Wells & Gray, LLP, and Lynch Carpenter LLP – easily meet the requirements of Rule 23(g). As detailed in the Wells Decl., Plaintiff is represented by counsel experienced in class action litigation including directly analogous cases. Indeed, Plaintiff's attorneys have extensive experience in wage and hour litigation, including litigation involving tip credit notification. Wells Decl., ¶¶ 11, 19-20. Plaintiff's primary counsel, Connolly Wells & Gray, LLP, was named Class Counsel in a substantially similar case involving tip credit notification, *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069-CCW, 2021 WL 5370047 at 10-11 (W.D. Pa. Nov. 18, 2021)(noting

18

Plaintiff's counsel has "has ably represented classes of plaintiffs in other wage and hour lawsuits") Moreover, that same firm was appointed class counsel by a sister court in this Circuit. *Graham v. Famous Dave's of Am., Inc.*, No. 19-cv-0486, 2020 U.S. Dist. LEXIS 174696 (D. Md. Sept. 23, 2020). Importantly, this Court has already certified both the Collective Class and Rule 23 Class, and thus found Connolly Wells & Gray, LLP, was adequate counsel for Putative Settlement Class Members. (ECF No. 31).

### 5. Pertinent Circumstances Surrounding the Negotiations

A settlement agreement is fair if the circumstances of the negotiations are such that all parties have "a clear view of the strengths and weaknesses of their respective positions, and sufficient information about the claims and defenses" at the time they begin negotiations. *Singleton v. Domino's Pizza, LLC,* 976 F.Supp.2d 665, 679 (D. Md. 2013) (emphasizing that the settlement was negotiated in mediation after briefing on a motion to dismiss).

Class Counsel have developed a comprehensive understanding of the merits of the case through our work on the Action. Indeed, the parties only began fulsome settlement negotiations after extensive discovery and resolution of Plaintiff's motions for summary judgment and class and collective certification. Indeed, Class Counsel reviewed over 10,000 documents produced by Defendants. Moreover, Class Counsel reviewed thousands of pages of payroll data and created detailed spreadsheets for each Putative Settlement Class Member. Upon creating spreadsheets of payroll data, Class Counsel was able to then compare the changing minimum wage rates with the Putative Settlement Class Members' tip credit notice form, and then subsequently compute estimated damages. Accordingly, when Class Counsel agreed to the proposed Settlement, they had sufficient information about the strengths and weaknesses of the claims and defenses in order to make a reasoned judgment about the desirability of settling the case pursuant to the terms proposed.

19

Moreover, the participation of Judge Anderson ensured that the settlement negotiations were conducted at arm's length and without collusion between the parties.

### 6.    The Proposed Settlement is Adequate

Courts within the Fourth Circuit must "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement" to determine whether the proposed settlement is adequate. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. at 1384.

### a)  The Relative Strength of Plaintiff's Claims

Plaintiff has strong arguments in her favor were this case to go forward. In the instant matter, the Court has already ruled that Defendants violated the FLSA and the MWHL. Moreover, it is black letter law that it is the employer's obligation to demonstrate the propriety of claiming a tip credit against employees' wages. *See, e.g., Acosta v. Mezcal, Inc*., No. 1:17-CV-00931, 2019 WL 2550660, *7 (D. Md. June 20, 2019) (collecting cases and finding "the employer bears the burden of demonstrating eligibility" to claim tip credit). Failure to do so means the employees are entitled to the full minimum wage, irrespective of the amount of tips they received. *Id.* (failure to comply with notification requirement "renders an employer ineligible to claim the credit, 'even if the employee received tips at least equivalent to the minimum wage'")(*quoting Prusin v. Canton's Pearls, LLC*, No. 1:16-CV-00605, 2017 WL 5126156, *3 (D. Md. Nov. 6, 2017)). Accordingly, this factor weighs in favor of approval.

### b)  Weaknesses in the Plaintiff's Case

As with most litigation, there are uncertainties and risks. As noted above, the Court has previously granted Plaintiff's motion for summary judgement. Nevertheless, proceeding to trial contains numerous inherent risks for Plaintiff. As an initial matter, there is a risk that individualized fact inquiries could require the Court to revisit class certification. The settlement eliminates the risk of the Court decertifying either the FLSA Collective or the Rule 23 Class. Defendants have

also raised the defense that it should not be required to forfeit the entire tip credit claimed, but only difference between what they claimed and what they informed their employees they would claim for the tip credit. While Plaintiff believes this defense is without merit, if successful, it would have a substantial impact on the damages available to Plaintiff and the FLSA Collective and Rule 23 Class. Finally, Defendants asserted that this issue – whether notice needs to be provided again, after a change in the minimum wage requirements – has never been litigated before. As such, absent resolution via this proposed settlement, Defendants assert that this case is rife with appellate issues.

Accordingly, this factor weighs in favor of approval of the proposed Settlement.

### c)  The Cost of Additional Litigation

If preliminary approval is not granted, the parties anticipate continuing discovery, including depositions and continued motion practice regarding Defendant's subsequent production of tip notice forms, and also preparing for trial. Following the additional discovery and motion practice, the parties will move forward with a trial that could entail the hiring of an expert and continued motion practice. This additional discovery, motion practice, and trial would involve thousands, if not hundreds of thousands, of additional attorneys' fees incurred by the parties. *See, e.g.*, *Alloways v. Cruise Web, Inc.*, No. 8:17-CV-02811, 2019 WL 1902813, at *10 (D. Md. Apr. 29, 2019) (noting the significant legal costs that would be incurred where the parties "would have to engage in motion practice concerning final class certification, formal discovery, and dispositive motions, not to mention trial."). Even more importantly, the long delay threatened by continued litigation and appeal would delay Putative Settlement Class Members' receipt of the benefits of this Settlement. Accordingly, this factor weighs in favor of settlement.

#### d)  Defendants' Ability to Pay a Judgment

Defendants, like many restaurants, were significantly impacted by the Covid-19 pandemic. Years since the origins of the pandemic, the restaurant industry is still facing difficult operating conditions. Due to these difficult operating conditions, and the increased legal costs that would be incurred should this matter proceed to trial, there is no guarantee that Defendants would have greater resources to pay a significantly higher amount. Notably, Defendants produced financial records to Magistrate Judge Anderson and Plaintiffs' counsel demonstrating Defendants' financial condition. The proposed Settlement was weighed against the very real risk that more fulsome recovery could have a significant and distressing financial impact on Defendants. The current state of the restaurant industry and the uncertainty of increased costs going forward was a factor weighed by Plaintiff in reaching this Settlement. Based on Plaintiff's Counsel's experience in litigating analogous cases against similar restaurants, Plaintiff's Counsel believes that the proposed settlement at this juncture is in the best interests of the Putative Settlement Class Members. Accordingly, this fact weighs in favor of granting preliminary approval of the proposed Settlement.

#### e)  There is no opposition to the settlement

Since Class Notice has not been disseminated yet, the Settlement Class has not had the opportunity to opine on the Settlement. Class Counsel will further address this factor at the Final Approval Hearing. However, Plaintiff serves as the representative to the Rule 23 Class and FLSA Collective and Plaintiff is in favor of the Settlement. Therefore, this factor weighs in favor of granting preliminary approval of the proposed Settlement.

### C.    THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS

In the instant Settlement, Defendant has agreed to pay a Settlement Amount of $2.015 million, out of which Putative Settlement Class Members will be paid based on the number of Tip Credit Hours worked during the Class Period. SA §§ 2.65, 4.8(B). The precise amount will be

determined once all Court awarded fees and expenses are deducted. SA § 4.8(B)(1). As described above, each Putative Settlement Class Member will receive a portion of the Settlement Amount based on the amount of alleged damages they specifically incurred (*e.g.*, the number of Tip Credit Hours they worked). Thus, the more hours an individual Putative Settlement Class Member worked, relative to his or her colleagues, the greater his or her share of the Settlement's proceeds.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiff. She is instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution she made to the prosecution of the litigation, including the burden and risks associated with bringing this action publicly as well as the time she expended on behalf of the class (*e.g.*, meetings with Plaintiff's Counsel, assumption of risks, serving as a class representative, assisting with discovery, helping counsel prepare for mediation, and making herself available – and conferring with counsel – during the mediation via the telephone). Wells Decl. at ¶ 37. Service Payments are routinely approved in this District. *See, e.g., Haney v. Genworth Life Ins. Co.*, No. 3:22cv55, 2023 U.S. Dist. LEXIS 15589 (E.D. Va. Jan. 30, 2023) (approving service payment to 4 class representatives in recognition of their services to the class, including participating in "pre-suit discovery" and production of relevant documentation).

Because of Plaintiff's individual efforts, Putative Settlement Class Members will receive significant benefits from the Settlement. The Parties have agreed that Plaintiff's counsel will petition the Court for a Service Payment to Plaintiff not in excess of $7,500. Defendants have agreed not to object to this request. Importantly, this Service Payment request is fully disclosed in the Class Notice and the Putative Settlement Class Members will have the opportunity to opine on this request if they should choose.

**D.    THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 CLASS FOR SETTLEMENT PURPOSES**

Plaintiff requests that the Court certify the following proposed class for settlement purposes only, pursuant to the Settlement Agreement: Plaintiff and all members of the class certified by the Court under Fed. R. Civ. P. 23 on April 13, 2023 (ECF No. 31). Excluded from this class, however, are all individuals who submit timely and effective Request for Exclusion forms by the Bar Date. In seeking certification under Federal Rule of Civil Procedure 23, Plaintiff must satisfy the four elements of Rule 23(a), and one or more of the requirements of Rule 23(b). As set forth below, Plaintiff clearly traverses this threshold. Notably, this Court has previously found that the proposed Rule 23 Class met the requirements of Fed. R. Civ. P. 23. Nothing has transpired since that order that changes that analysis.

### 1.    Fed. R. Civ. P. 23(a) Requirements are Satisfied

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

> One or more members of a class may sue or be sued as representatives parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). Here, all four elements are satisfied for purposes of certifying the proposed Rule 23 Class.

### a)    Rule 23(a)(1) – "Numerosity"

The proposed Rule 23 Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R CIV. P. 23. There is no set minimum number of potential class members that fulfills the numerosity requirement. See *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). However, where the class numbers 25 or

24

more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); s*ee also, Stanley v. Central Garden and Pet Corp.*, 891 F.Supp.2d 757, 770 (D. Md. 2012) (Holding that "[c]lasses of as few as 25 to 30 have been found to raise[ ] the presumption that joinder would be impracticable") (internal quotations omitted). Here, the number of Class Members in the Rule 23 Class consists of 178 individuals. Wells Decl. at ¶ 6. The numerosity requirement is therefore satisfied.

### b) Rule 23(a)(2) – "Commonality"

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, commonality exists because the Rule 23 Class Members' claims are predicated on the same core common issue: whether Defendants failed to satisfy the notice requirements of the tip credit, particularly when there was a change in the minimum wage rate. As such, the Rule 23 Class raises common questions of law and fact "capable of classwide resolution." *Alloways v. Cruise Web, Inc.,* No. 8:17-CV-02811, 2019 WL 1902813 at *7 (D. Md. Apr. 29, 2019).

25

### c) Rule 23(a)(3) – "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R CIV. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.

Typicality is demonstrated where a plaintiff can show that his "interest in prosecuting his own case...simultaneously [advances] the interests of the absent class members." *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (D. Md. 2006). The crux of the typicality requirement is captured by the notion that "as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir.1998). As one district court in this Circuit aptly noted in granting class certification pursuant to a MWHL claim for unpaid overtime, factual differences between the damages claimed by the named plaintiff and the class members did not defeat typicality, since "the legality of the overtime calculation policy itself is at the heart of [named plaintiff's] MWHL claim." *Edelen v. Am. Residential Servs., LLC*, No. 8:11-CV-02744, 2013 WL 3816986, at *6 (D. Md. July 22, 2013).

Here, Plaintiff's claims arose from a common course of conduct by Defendants of allegedly failing to satisfy the notice requirements of the tip credit when there was a change in the prevailing minimum wage rate. As such, the Plaintiff's claims are typical of the claims of members of the Rule 23 Class.

### d) Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R CIV. P. 23. "Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (*citing Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)). To assess adequacy, courts within the Fourth Circuit focus on whether (1) the named plaintiff's interests are not antagonistic to those of other class members, and (2) plaintiff's attorneys are competent, qualified, and experienced. *See Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006); *Barnett v. W.T. Grant Co.*, 518 F.2d 543 (4th Cir. 1975).

Here, Plaintiff satisfies both prongs and adequacy is readily met. First, Plaintiff has no interests adverse or "antagonistic" to absent Rule 23 Class Members. Plaintiff seeks to hold Defendants accountable for, among other things, allegedly failing to pay its servers mandated minimum wages for all hours worked when they failed to satisfy the necessary requirements to pay the lesser tip credit wage. Further, Plaintiff has demonstrated her allegiance and commitment to this litigation by assisting with discovery, maintaining contact with Class Counsel throughout the litigation and helping counsel prepare for the settlement conference. As such, Plaintiff's

interests are perfectly aligned with the interests of the absent Rule 23 Class Members, thereby meeting the first adequacy prong.

Second, as discussed in greater detail below, Plaintiff's Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation – specifically including wage and hour actions. Moreover, this Court has already found Plaintiff's counsel satisfies the adequacy prong. There is nothing that should make the Court question the propriety of that prior ruling.

### 2.    The Rule 23 Class Should Be Certified Under Rule 23(b)

In addition, Plaintiff must satisfy Rule 23(b)(3)'s two additional requirements: (1) common questions of law or fact must "predominate over any questions affecting only individual members" and (2) "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff satisfies these requirements here.

### a)  Predominance is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). The Fourth Circuit has also held that the predominance analysis is "qualitative rather than quantitative," meaning that, even where there is a high number of individual damages issues, predominance may still be found where "the qualitatively overarching issue" is the liability of the defendant pursuant to the alleged conduct. *Stillmock v. Weis Markets, Inc.,* 385 Fed.Appx. 267, 273 (4th Cir. 2010).

Here, predominance is satisfied because the success or failure of Plaintiff's challenge to Defendants common practice of taking a tip credit without updating their tip credit notice when there was a change in minimum wage rates will require the Court to apply common legal principles

to common facts. Courts within this Circuit have found predominance in tip credit notice class actions. *See, e.g., Mendoza v. Mo's Fisherman Exchange, Inc.,* No. 1:15-CV-01427, 2016 WL 3440007 at *15 (D. Md. June 22, 2016) (finding that wage and hour allegations, including improper tip credit notice, predominated).

### b) Superiority is Satisfied

Rule 23(b)(3) also requires the Court to determine whether the class action mechanism is superior to resolution of the disputes through other available means. This superiority prong consists of four (4) factors to consider when determining whether a class action is superior to other adjudication: "(A) the interests of the members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of other pending litigation about the controversy by members of the class; (C) the desirability of concentrating the litigation in a particular forum; and (D) the difficulties likely to be encountered in management of the class action." Fed. R. Civ. Pro. 23(b)(3); *see also Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. October 18, 2010).

Here, each of these factors weighs in favor of the certification of the settlement class. Plaintiff is not aware of any other litigations pending against the Defendants for the same alleged violations in this lawsuit in the State of Maryland. There is no indication that the absent settlement class members would prefer to prosecute this action individually. Concentrating this litigation in this Court is desirable because Defendants are headquartered in Virginia. Lastly, when a certification is for the settlement purposes only, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620 (1997). The superiority requirement is satisfied.

### E. THE PROPOSED SETTLEMENT NOTICE TO THE CLASS SHOULD BE APPROVED

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

The Parties' proposed means of class notice meets or exceeds the standards for due process and Rule. Here, the Parties proposed notice plan includes direct mail, email (where available) and website publication. This comprehensive notice plan is intended to fully inform Settlement Class members of the Action, the proposed Settlement, and the information they require in order to make informed decisions about their rights, including the date, time and location of the Final Fairness Hearing. Further, the Notice is individualized insofar as it provides Putative Settlement Class Members with an Estimated Settlement Payment as to how much they will receive from this Settlement should the proposed Settlement be approved by the Court.

### F. CONNOLLY WELLS & GRAY, LLP AND WEBSTER BOOK LLP SHOULD BE APPOINTED AS CLASS COUNSEL TO THE SETTLEMENT CLASS

As this Court has already determined, Class Counsel – Connolly Wells & Gray, LLP, and Webster Book LLP - easily meet the requirements of Rule 23(g). Importantly, Class Counsel are

experienced in class action litigation including directly analogous cases. Notably Connolly Wells & Gray have been appointed class counsel in many class actions, including many wage and hour actions, and successfully tried them to conclusion. *See, e.g.*, Wells Decl, at ¶¶ 20-21. There is no reason for this Court to reexamine its previous finding that Connolly Wells & Gray, LLP and Webster Book LLP satisfy the adequacy requirement to serve as Class Counsel.

## G.    THE PROPOSED ATTORNEYS' FEES ARE REASONABLE

"In approving either a Rule 23 settlement or a private settlement of FLSA claims, the reasonableness of any award of attorneys' fees must be assessed." *Edelen v. Am. Residential Servs., LLC,* Civil Action No. 11-cv-2744, 2013 WL 3816986 at *11 (D. Md. July 22, 2013). In FLSA actions, courts in this Circuit generally determine the lodestar amount which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In Rule 23 class actions, it is not uncommon to use a percentage method to calculate an award of attorneys' fees in common fund cases. *Singleton*, 976 F. Supp. 2d at 681; *see also Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."). Indeed, "the percentage method is more efficient and less burdensome than the traditional lodestar method and offers a more reasonable measure of compensation for common fund cases." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995).

Importantly, this is true in FLSA common fund cases too. *See Rosales*, at *8 (holding "a fee award determined by percentage is preferred over the lodestar method in common fund cases such as this"); *Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5624300 at *4 (E.D. Va. Oct. 9, 2018) (approving 33.33% of FLSA common fund with 6.4 multiplier and noting a preference for fees based on a percentage); *see also McCune v. Faneuil Inc.,* No. 4:23cv41, 2024

31

U.S. Dist. LEXIS 144184, *17 (E.D. Va. 2024) ("the fee award here, 33.3 percent, is comparable to those earned in similar FLSA cases"). "Courts that have permitted an FLSA collective action and a Rule 23 class action to proceed in the same case have routinely awarded attorneys' fees based on a percentage of the fund." *Leigh v. Bottling Group, LLC*, 2012 WL 460468 n.4 (D. Md. Feb. 10, 2012).

As noted above, Class Counsel will seek an award of attorney's fees in an amount not to exceed one-third of the Settlement Amount. A request for one-third of a settlement fund is common in this Circuit and generally considered reasonable. *See Starr v. Credible Behavioral Health, Inc.*, No. 20-2986 PJM, 2021 WL 2141542 at *5 (D. Md. May 26, 2021) (citing *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505-06 (M.D.N.C. 2018). Pursuant to the Settlement Agreement, prior to a final approval hearing, Class Counsel will file a separate motion justifying the appropriateness of this request in greater detail. Further, and most importantly, Class Counsel's intent to seek up to one-third of the Settlement Amount in fees and for reimbursed expenses is plainly documented in the proposed Class Notice. As such, Class Counsel will be fully prepared to substantiate their fee request at the final approval hearing, after dissemination of notice and Putative Settlement Class Members have had an opportunity to opine on the propriety of counsel's request.

## V.    CONCLUSION

The proposed Settlement is fair, reasonable and adequate. Thus, for all the reasons set forth above, preliminary approval should be, respectfully, granted and the Preliminary Approval Order entered so as to permit the Parties to effectuate notice to Putative Settlement Class Members.

Dated: June 16, 2025

Respectfully submitted,

**WEBSTER BOOK, LLP**

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
2300 Wilson Blvd, Suite 728
Arlington, VA 22201
Tel. and Fax: (888) 987-9991
Email: swebster@websterbook.com

**CONNOLLY WELLS, & GRAY, LLP**
Gerald D. Wells III (admitted *pro hac vice*)
Robert J. Gray
101 Lindenwood Dr., Ste. 225
Malvern, PA 19355
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
        rgray@cwglaw.com

***Attorneys for the Plaintiff and the Classes***

33

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 16, 2025, a true and correct copy of the foregoing was filed with the Court utilizing its CM/ECF system, which will send notice of such filing to all counsel of record.

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP
